UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:18-cv-00180-FDW

| | |
|---|---|
| ANN MARIE KLINE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | ORDER |

THIS MATTER is before the Court on Plaintiff Ann Marie Kline's Motion for Summary Judgment (Doc. No. 13) filed on September 25, 2018, Defendant Acting Commissioner of Social Security Nancy A. Berryhill's ("Commissioner") Motion for Summary Judgment (Doc. No. 17) filed on December 31, 2018, and Plaintiff's Response (Doc. No. 19) filed on January 9, 2019. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits ("DIB").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, the COURT DENIES Plaintiff's Motion for Summary Judgment and GRANTS Commissioner's Motion for Summary Judgment.

I. BACKGROUND

Plaintiff filed an application for disability benefits under Title II on May 17, 2012. (Tr. 11). After her application was denied initially and upon reconsideration (Tr. 11, 168, 175, 176), Plaintiff requested a hearing (Tr. 180). A hearing was held on October 22, 2014. (Tr. 11, 98, 189, 223). On December 12, 2014, the ALJ issued an unfavorable decision. (Tr. 145). On April 15,

2016, the Appeals Council remanded the case to the ALJ. (Tr. 162-66). The ALJ held a new hearing on May 8, 2017. (Tr. 11, 55, 250, 258). Plaintiff's request for review by the Appeals Council was denied on December 8, 2017. (Tr. 1).

The ALJ determined Plaintiff was not disabled since April 3, 2007. (Tr. 11). The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date and that she had the severe impairments of degenerative joint disease, status post right shoulder surgert, osteoarthritis, rheumatoid arthritis, and tobacco abuse. (Tr. 14). The ALJ determined that none of these impairments nor any combination of the impairments met or medically equaled a per se disabled medical listing under 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 15). The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC"):

> [T]o perform light work as defined in 20 CFR 404.1567(b) except frequent balance, stoop, kneel, crouch, and crawl; occasional climbing; frequent exposure to temperature extremes and humidity; and occasional overhead reaching with right upper extremity.

(Tr. 15-16). The vocational expert ("VE") testified that the Plaintiff was capable of performing past relevant work as a reservations agent. (Tr. 24). In the alternative, in response to a hypothetical that factored in Plaintiff's age, education, work experience, and RFC, the VE testified that an individual with these limitations could perform jobs in the national economy and listed jobs, which work exists in significant numbers in the national economy. (Tr. 24). Thus, the ALJ concluded that Plaintiff was not disabled, as defined in the Social Security Act. (Tr. 27).

Plaintiff has exhausted all administrative remedies and now appeals. (Doc. No. 1). In Plaintiff's motion for summary judgment, Plaintiff claims that the ALJ's decision should be reversed and remanded because (1) the ALJ improperly rejected new evidence and (2) the ALJ's appointment did not comply with the Appointments Clause. (Doc. No. 14 at 3).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step

process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence,"

4

> 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

## III. ANALYSIS

### A. The "Five-Day Rule"

Plaintiff's first assignment of error is that the ALJ rejection of new opinion evidence from her treating sources submitted after the hearing was legally erroneous and not supported by substantial evidence. (Doc. No. 14 at 9). Under 20 C.F.R. § 404.935(a), when a claimant submits a request for a hearing, the claimant must submit information or evidence as required under § 404.1512 or any summary of evidence to the ALJ. 20 C.F.R. §§ 404.935(a), 416.1435(a). Pursuant to § 404.935(a), "[e]ach party must make every effort to ensure that the [ALJ] receives all of the evidence and must inform the [ALJ] about or submit any written evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing." However, if the

5

claimant fails to comply with the regulations set forth in paragraph (a), the ALJ "[m]ay decline to consider or obtain the evidence, *unless the circumstances described in paragraph (b) of this section apply*."[1] Id. (emphasis added).

However, in providing guidance regarding what is often referred to as the "Five-Day Rule," the Social Security Administration ("SSA") recognized "that there will be circumstances in which claimants cannot produce evidence at least five business days before the hearing." Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 Fed. Reg. 90987, 90990, 2016 WL 7242991 (Dec. 16, 2016). As a result, the SSA "included appropriate exceptions to the 5-day requirement to ensure fairness when a claimant or his or her representative actively and diligently seeks evidence but is unable to obtain it." Id. Regarding the listed exception concerning unexpected or unavoidable circumstances beyond the claimant's control, the SSA has advised that when "a claimant or representative shows that he or she made a good faith effort to timely request, obtain, and submit evidence, but he or she did not receive the evidence in time to submit it at least 5 business days before the hearing because of circumstances outside of his or her control, [the SSA] expect[s] that our adjudicators would find that this standard is met." Id. However, while it is clear that there are different ways in which a claimant may satisfy the exception to the Five-Day Rule established in § 404.935(b)(3), and the regulations do allow some flexibility in meeting the good cause standard established in § 404.935(b)(3), the plain meaning of the regulation and the SSA's guidance illustrates that the claimant must make some showing that an event, which was out of the ordinary or unavoidable

---

[1] The Court notes that Plaintiff does not cite to a specific provision in § 404.935(b) to support her argument that the ALJ should have accepted her late-produced medical statements. However, the Court finds that Plaintiff's "good cause" arguments most closely relate to a purported exception under § 404.935(b)(3).

6

and was also outside of the claimant's control, prevented the claimant from informing the ALJ or submitting the proposed evidence within five days of the hearing.

In this matter, the ALJ refused to accept the late-produced medical statements completed by P. Martin Bradshaw on May 17, 2017, and Dr. Neal Taub, M.D. on May 25, 2017, because the requirements of 20 C.F.R § 404.935(b) were not met. See (Tr. 12). As explained by the ALJ in her decision,

> The Piemonte Law Firm has represented the claimant since 2012. In a letter dated May 25, 2017, well after the hearing and almost [five] years after the relevant period, Mr. Piemonte wrote that the claimant's ability to reach, maintain attention and concentration, and need to elevate her legs "became significant." He wrote that he obtained the medical opinions to address these issues. However, the undersigned finds that the representative had adequate time to identify these issues and obtain this evidence prior to the hearing. The representative provided no good cause for the delayed evidence requests or submissions. It is determined that the representative did not "actively and diligently" seek evidence in this matter and failed to fulfill the duty to act with reasonable promptness in obtaining evidence.

(Tr. 12). Here, the Court similarly finds that Plaintiff did not satisfy the requirements under § 404.935(b)(3) to warrant an exception. Ultimately, it was Plaintiff's responsibility to demonstrate an exceptional reason why she failed to timely produce the medical statements, including whether she actively and diligently sought the late-filed evidence. See Midkiff v. Berryhill, 2019 WL 1258845, at *2 (S.D.W.V. Mar. 19, 2019). Plaintiff, however, has failed to demonstrate that she actively sought the late-produced medical statements and show that unforeseen or unavoidable circumstances beyond Plaintiff's control *prevented* her from timely submitting Mr. Bradshaw and Dr. Taub's May 2017 medical statements as required under § 404.935(a) and § 404.1512. To the extent Plaintiff contends that the medical statements by Mr. Bradshaw and Dr. Taub were relevant to her RFC determination, those statements were always relevant and should have been timely produced for her hearing. See § 404.1512 ("In general, you have to prove to us that you are blind

7

or disabled. You must inform us about or submit *all* evidence known to you that relates to whether or not you are blind or disabled.").

The Court is not persuaded by Plaintiff's argument that she should have been granted an exception under § 404.935(b)(3) because the ALJ's RFC determination in the second hearing differed from that in the first hearing.[2] An ALJ's discretion to make a *de novo* determination of a claimant's RFC is limited by two related principles, the mandate rule and the law of case doctrine. See Tanner v. Comm'r of Soc. Sec., 602 F. App'x 95, 98 (4th Cir. 2015) ("presum[ing] without deciding that the Social Security Administration is an agency to which the mandate rule applies"). In its remand order, the Appeals Council did not mandate that the ALJ carry over any findings from the first decision. See (Tr. 164-66). To the contrary, the Appeals Council vacated the first hearing decision and ordered the ALJ to give further consideration to the claimant's maximum RFC during the relevant period and provide rationale with specific references to the record. Id. at 164. The Appeals Council further ordered that "[i]n compliance with the above, the [ALJ] will offer . . . a hearing, address the evidence which was submitted with the request for review, take any further action needed to complete the administrative record and issue a new decision." Id. at 165. Accordingly, the ALJ followed the Appeal Council's directive by giving "further consideration to the claimant's maximum RFC" and making new findings as to Plaintiff's RFC. Nothing in the regulations, see 20 C.F.R. § 416.1477(b), nor in the Appeals Council's remand order diminished the ALJ's statutory authority to reweigh the evidence before her and make findings of fact after remand. The Court thus finds that there is no basis for Plaintiff's reliance on

---

[2] Notably, Plaintiff does not cite to a single authority which supports her assertion that the ALJ's changed RFC finding in the second hearing constitutes an unusual, unexpected, or unavoidable circumstance beyond Plaintiff's control such that the ALJ should have admitted the medical statements into the record under § 404.935(b)(3).

8

the ALJ's findings at the first hearing as the first RFC determination was vacated and the new hearing was conducted *de novo*.

Ultimately, it was Plaintiff's responsibility to provide all relevant evidence related to her disability on time, see 20 C.F.R. §§ 404.935(a), 404.1512(a), or demonstrate an exceptional reason why she failed to timely produce such evidence, see 20 C.F.R. § 404.935(b). Plaintiff has simply failed to meet her burden to timely produce the medical source statements and articulate a basis for an exception for late-produced evidence under § 404.935(b)(3). Accordingly, the Court finds that the ALJ's rejection of Mr. Bradshaw and Dr. Taub's late-produced medical source statements on the basis that it did not meet the requirements of 20 C.F.R. § 404.935(b) was a correct application of the law and supported by substantial evidence.

The Court will not consider Plaintiff's remaining arguments weaved into her first assignment of error that are not properly set forth in separate assignments of error. Buried in her first assignment of error, Plaintiff argues that substantial evidence does not support the ALJ's RFC determination and evaluation of Dr. Barron's opinion evidence. (Doc. No. 14 at 12-16). Plaintiff's assertion fails to raise this issue as separate assignments of error and thus will not be considered by the Court.

> The Court notes that to the extent that Plaintiff attempts to weave any other disparate legal arguments or errors into [her] assignments of error, the Court disregards those arguments. Such arguments must be set forth in separate assignments of error to be considered by this Court. The Court again instructs counsel for Plaintiff to separately set forth each alleged error both so that the Court may consider them and to aid counsel in analyzing the proper framework and legal bases for these arguments.

Strawn v. Berryhill, 5:17-cv-00174-MR, 2019 WL 690355, at *3 n.3 (W.D.N.C. Feb. 19, 2019) (citation omitted); McDonald v. Berryhill, 3:17-cv-00623-MR, 2019 WL 109450, at *3 n.3 (W.D.N.C. Jan. 4, 2019) (citation omitted); Albaeck v. Berryhill, 5:17-cv-00072-MR, 2018 WL

3995947, at *4 n.2 (W.D.N.C. Aug. 21, 2018) (citation omitted); Dixon v. Berryhill, 3:17-cv-00463-MR, 2018 WL 3833501, at *3 n.2 (W.D.N.C. Aug. 13, 2018) (citations omitted); Moore v. Berryhill, 1:17-cv-00122-MR, 2018 WL 3543084, at *7 n.4 (W.D.N.C. July 23, 2018) (citations omitted). "In fact, this Court has recently explained to counsel that it would not consider a challenge to an RFC determination contained within another assignment of error." Mason v. Berryhill, No. 1:16-cv-148, 2017 WL 2664211, at *4 (W.D.N.C. May 30, 2017), adopted by, 2017 WL 2662987 (W.D.N.C. June 20, 2017) (citing Armstrong v. Colvin, 5:15cv110, 2016 WL 7200058, at *6 n.2 (W.D.N.C. Sept. 2, 2016) ("The Court notes that Plaintiff does not challenge the RFC determination of the ALJ in a separate assignment of error supported by legal authority, as required by this Court.")).

Similarly, the Court will not consider Plaintiff's argument regarding the Appeals Council's decision not to address the ALJ's rejection of the late-produced medical statements. (Doc. No. 14 at 19-20).

> It is not the role of this Court to recraft a legal argument submitted by counsel and make counsel's legal argument for him or her; this Court's role is to rule on the specific legal arguments presented by counsel. This is especially true in cases such as this where counsel presents a cursory legal argument spanning less than two full pages with virtually no legal argument.

Mason, 2017 WL 2664211 at *4; see also Sanders v. Berryhill, No. 1:16-cv-0236-MOC-DLH, 2017 WL 3083730, at *3 (W.D.N.C. June 12, 2017), adopted by, 2017 WL 3083261 (W.D.N.C. July 19, 2017). As Plaintiff only makes conclusory statements devoid of any citation to case law or application of case law to the facts, the Court will not consider these arguments. See Garrison v. Berryhill, No. 1:17-cv-00302-FDW, 2018 WL 4924554, at *3 (W.D.N.C. Oct. 10, 2018) (rejecting other legal arguments of error woven into Plaintiff's sole assignment of error when

10

"[a]fter asserting this one assignment of error, Plaintiff does not proceed to articulate any analysis or meaningful legal arguments in support thereof").

B. Appointments Clause

Plaintiff's second assignment of error is that the ALJ's appointment did not comply with the Appointments Clause. (Doc. No. 14 at 3). In Lucia v. SEC, 138 S. Ct. 2044, 2055 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. The court concluded that because Lucia made a timely challenge to the validity of the ALJ's appointment before the SEC and in subsequent litigation, he was entitled to a new hearing before a properly appointed official. Id. ("'[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief.") (quoting Ryder v. United States, 515 U.S. 177, 182–83 (1995)).

Here, Plaintiff failed to challenge the ALJ's appointment in the administrative proceeding before the SSA.³ Plaintiff raised this issue for the first time before this Court, and therefore, her challenge is untimely. See Lucia, 138 S. Ct. at 2055 (finding Lucia's challenge was timely because he challenged the ALJ's appointment before the SEC and continued to pursue his claim in court). Courts in this circuit having considered post-Lucia Appointment Clause challenges to Social Security ALJ appointments "[h]ave unanimously rejected attacks on the validity of the ALJ's appointment under Lucia if claimant failed to make a constitutional challenge at the administrative level before the ALJ or the Appeals Council." Higgs v. Berryhill, No. 4:18-CV-22-FL, 2019 WL 848730, at * 8 (E.D.N.C. Jan. 10, 2019) (internal quotations omitted) (citing cases); see also

---

³ Plaintiff appears to concede that she did not challenge the ALJ's appointment at the administrative level. See (Doc. No. 14 at 20-23; Doc. No. 19).

11

Weatherman v. Berryhill, No. 5:18-cv-00045-MOC, 2018 WL 6492957, at *4 (W.D.N.C. Dec. 10, 2018) (finding post-Lucia challenge to appointment of Social Security ALJ "not to be cognizable on appeal as plaintiff did not first raise it before the Commissioner administratively); Britt v. Berryhill, No. 1:18-cv-00030-FDW, 2018 WL 6268211, at *2 (W.D.N.C. Nov. 30, 2018) (denying motion to remand under Lucia on the grounds that the ALJ and the Administrative Appeals Judge presiding over his claim were not constitutionally appointed because the claimant "forfeited the issue by failing to raise it during his administrative proceedings.") (citing Garrison v. Berryhill, No. 1:17-cv-00302-FDW, 2018 WL 4924554 (W.D.N.C. Oct. 10, 2018); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended) (holding that the plaintiff forfeits issues not raised before the ALJ or Appeals Council)).

While this Court acknowledges that the rationale of issue exhaustion is less compelling in non-adversarial proceedings, when balancing all relevant considerations, including the multiple Social Security regulations indicating that a claimant "should" or "must" raise issues at the administrative level as soon as practicable, as well as efficiency interests, this Court agrees with countless prior federal district court decisions in this circuit holding that the court-imposed issue exhaustion is appropriate in the Social Security context, at least with respect to appointments clause challenges. See Parker v. Berryhill, 4:17-cv-143, 2019 WL 1396429, at *2 (E.D. Va. Mar. 21, 2019) (citations omitted). "Moreover: (1) Social Security regulations provide an express procedure for challenging, at the earliest opportunity, the assigned ALJ; and (2) the Supreme Court has never indicated that the appointment challenges must be heard regardless of forfeiture, but instead the Court has proceed on a case-by-case basis, determining whether the circumstances of the particular case warrant excusing the failure to timely object." Id. (citing In re DBC, 545 F.3d 1373, 1380 (Fed. Cir. 2008) (citing Freytag v. Comm'r, 501 U.S. 868, 879, 893 (1991))). Like the

court in Parker, this Court similarly finds no case-specific circumstances that warrant excusing Plaintiff's failure to timely raise an appointment challenged during the administrative process.[4] See Parker, 2019 WL 1396429 at *2 (declining to excuse Plaintiff's noncompliance because (1) the published appellate decision in Lucia issued several months prior to the plaintiff's hearing should have put Plaintiff's counsel on notice of the availability of an appointment's clause challenge during both phases of the administrative review process, and (2) the court did not want to incentivize "sandbagging"). Accordingly, the Court applies the doctrine of issue exhaustion and finds that Plaintiff has waived any challenge to the ALJ's appointment by failing to raise it below. For these reasons, the Court declines to remand on this basis.

## IV. CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 13) is DENIED; the Commissioner's Motion for Summary Judgment (Doc. No. 17) is GRANTED and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: April 23, 2019

Frank D. Whitney
Chief United States District Judge

---

[4] The District of Columbia issue a published opinion in Lucia in August of 2016. Raymond J. Lucia Companies, Inc. v. Sec. & Exch. Comm'n, 832 F.3d 277, 285 (D.C. Cir. 2016). On February 16, 2017, the D.C. Circuit granted a petition for rehearing en banc in Lucia. Plaintiff's hearing before the ALJ was not conducted until May of 2017, three months after the en banc petition was granted. Plaintiff submitted her administrative appeal on October 12, 2017, eight months after the en banc petition was granted. Published appellate case law, therefore, should have put Plaintiff's counsel on notice of the availability of an appointment's clause challenge at both phases of the administrative review process.